STATE of Minnesota, Respondent,

v.

Timothy Warren KUHNAU,
Petitioner, Appellant.

No. C2–99–160.

Supreme Court of Minnesota.

March 1, 2001.

John M. Stuart, State Public Defender, Bryan J. Leary, Spec. Asst. Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Atty. Gen., Robert Stanich, Asst. Atty. Gen., St. Paul, Gaylord A. Saetre, Todd County Atty., Long Prairie, for respondent.

## OPINION

GILBERT, Justice.

This appeal involves our review of a jury instruction given in a trial on a charge of conspiracy to commit the crime of first-degree sale of the controlled substance methamphetamine. Appellant Timothy Warren Kuhnau alleges error because the conspiracy instruction given at trial did not include all the elements of the substantive crime that was the object of the conspiracy. The instruction omitted the words "when Mr. Kuhnau knew or believed that the substance sold was methamphetamine." This specific language was, however, included in the instructions given for the three sale of methamphetamine counts that were tried along with the conspiracy count. The jury returned a guilty verdict on the conspiracy count only.

During the fall of 1997, the Todd County Sheriff's Department and the West Central Minnesota Drug Task Force cooperated in an undercover investigation of several individuals suspected of selling methamphetamine in Long Prairie, Minnesota. Drug Task Force Special Agent Charles Sherbrooke and an informant began purchasing methamphetamine in October 1997. They first purchased methamphetamine from Timothy Kuhnau on October 22, 1997. Then, on November 5, 1997, Sherbrooke and the informant made three additional methamphetamine purchases from Kuhnau. At the last sale, Sherbrooke identified himself as a law enforcement officer and arrested Kuhnau. Kuhnau's roommate, Joe Ferrian, and another man were subsequently arrested and charged as conspirators.

Kuhnau was then charged with one count conspiracy to commit controlled substance crime in the first degree (conspiracy to sell fifty grams or more of methamphetamine) in violation of Minn.Stat. §§ 152.096, subd. 1 (2000), and 152.021, subd. 1(3) (2000), and subd. 3 (2000), and two counts controlled substance crime in the second degree (sale of ten grams or

more of methamphetamine) in violation of Minn.Stat. § 152.022, subd. 1(2) (1996), and subd. 3 (1996). Kuhnau was also charged with one count controlled substance crime in the fourth degree (sale of methamphetamine) in violation of Minn. Stat. § 152.024, subd. 1(1) (2000), and subd. 3 (2000) for selling methamphetamine on October 22, 1997.

A jury trial was held and Kuhnau testified in his own defense. He testified that Ferrian was a drug dealer and the source of all the methamphetamine. Sometimes Ferrian would "cut" real methamphetamine but sometimes he would sell phony methamphetamine. Kuhnau testified as to the October 22, 1997 sale count stating that he did not know that the substance he sold was in fact methamphetamine. His defense for the November 5, 1997 sale and conspiracy counts was that he thought he was selling "bogus" or phony methamphetamine. The state tested the chemical compositions of the substances Kuhnau and his coconspirators sold, and all substances were found to be authentic methamphetamine. The drugs were then lost when the lab sent them back to the investigators. As a result, Kuhnau was not able to verify the accuracy of the state's testing.

Near the end of his trial, Kuhnau urged the court to modify the proposed conspiracy instruction. He requested that the statutory definition of the conspiracy's substantive crime be removed from the definition section and be inserted directly within the conspiracy instruction. He also requested that the instruction list the additional elements of the substantive crime that have to be found. The court refused Kuhnau's requests. Although Kuhnau was charged by complaint with violating Minn. Stat. § 152.096, subd. 1, the conspiracy instruction used by the court actually tracked Minn.Stat. § 609.175, subd. 2, and 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 5.06 (4th ed.1999). Additionally, later on in the definition section, the jury was instructed in regard to the elements of conspiracy CRIMJIG 5.07 and of the following CRIMJIGs: Overt Act (CRIMJIG 5.08), completed crime not necessary (CRIMJIG 5.09), Overt Act not agreed to by defendant (CRIMJIG 5.10), and nature of agreement required (CRIMJIG 5.11).

During closing arguments, Kuhnau argued that if one party intended or agreed to sell phony drugs, that party did not have the intent to conspire to sell real methamphetamine. Kuhnau argued that because he did not agree to sell real methamphetamine, he could not be found guilty of conspiring to sell methamphetamine. The state was allowed to rebut Kuhnau's closing argument on this issue. In rebuttal, the state argued that Kuhnau's statement of the law of conspiracy was inaccurate. The state then reiterated its argument that a conspiracy requires only an agreement to commit a crime and an overt act. The state urged the jurors to refer to their jury instructions on this point rather than what they heard. The instructions omitted the words "knew or believed that the substance sold was methamphetamine."

After deliberating, the jury returned a guilty verdict on the conspiracy count only. The jury acquitted Kuhnau on one of the second-degree sale counts and on the fourth-degree sale count, but the jury was unable to reach a verdict on the remaining second-degree sale count. Following the verdict, Kuhnau moved for judgment of acquittal or, in the alternative, a new trial. The court denied Kuhnau's post-trial motion. The court then sentenced him to the presumptive 134–month sentence. Kuhnau appealed, and the court of appeals affirmed in an unpublished opinion.

Kuhnau appeals the court of appeals' decision, arguing that the conspiracy instruction was in error because the elements of the conspiracy's underlying offense—first-degree sale of a controlled substance—were not included in the conspiracy instruction. The state alleges that Kuhnau's request to include those ele-

ments did not amount to an objection to the conspiracy instruction at trial and that because Kuhnau did not raise this issue until his motion for a new trial, the objection to the conspiracy instruction was not timely.

### I.

■ From the outset, we note that although Kuhnau did not clearly articulate his objection to the conspiracy instruction at trial, a detailed examination of the trial transcript convinces us that the objection to the jury instruction he raises now was embodied in his objection at trial. In making his objection at trial, Kuhnau argued that the statutory definition of a first-degree controlled substance offense be included directly within the conspiracy instruction. He further requested the court to "list the additional elements that have to be found so that at least it is clear to the jury that in fact there is more to be reckoned with here * * *."

While this objection was not as explicit as it could have been, the state's response to Kuhnau's objection is illustrative of each party's understanding of its meaning. The state argued:

> Getting on to the defendant's allegations that number four on the first-degree conspiracy charge should include all of the elements of a controlled substance crime in the first degree would be totally inaccurate as to the law of conspiracy.

The state's use of the phrase "all of the elements of a controlled substance crime" indicates an interpretation of Kuhnau's objection as more than merely a request to move a statutory definition. Rather, the state interpreted Kuhnau's objection as a request to include all the elements of the conspiracy's substantive crime—including

an element instructing the jury to determine whether Kuhnau "knew or believed the substance he sold was methamphetamine."[1] Accordingly, we hold that Kuhnau's objection was a request to incorporate this element into the conspiracy charge along with the other statutory elements of a first-degree controlled substance offense. We therefore conclude that Kuhnau properly objected to the substance of the conspiracy instruction at trial. Because Kuhnau objected to the substance of the jury instructions at trial, he has preserved his right to seek a substantive review of the conspiracy instruction given at his trial. Minn. R.Crim. P. 26.03, subd. 18(3).

### II.

■ Our conclusion that Kuhnau objected to the conspiracy instruction at trial controls the standard of review we employ to analyze the remaining issues. We have previously held that a district court has the discretion to determine whether to give a requested jury instruction. *State v. Broulik*, 606 N.W.2d 64, 68 (Minn.2000). We afford a court significant discretion to craft the jury instructions. *State v. Peou*, 579 N.W.2d 471, 476 (Minn.1998). We have held that when a district court exercises its discretion and refuses to give a requested instruction, no error results if no abuse of discretion is shown. *See State v. Blasus*, 445 N.W.2d 535, 542 (Minn. 1989). Thus, we review the court's decision to refuse the requested instruction under an abuse of discretion standard, and the focus of our analysis is on whether the court's refusal to give Kuhnau's requested instruction resulted in error.

■ When we review jury instructions for error, we review the instructions

---

**1.** At Kuhnau's trial, the jury was instructed in regard to the two second-degree and one fourth-degree sale counts that the elements of a sale of a controlled substance offense are:

> That the defendant, Timothy Warren Kuhnau,
> At approximately ＿＿ ＿＿.m. on, ＿＿＿＿＿,
> ＿＿＿ in Todd County

> Sold a mixture containing ＿＿ grams or more of methamphetamine.
> When Mr. Kuhnau *knew or believed* that the substance he sold was methamphetamine. (emphasis added).

in their entirety to determine whether they fairly and adequately explained the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). An instruction is in error if it materially misstates the law. *See State v. Pendleton,* 567 N.W.2d 265, 269–70 (Minn.1997). Furthermore, it is well settled that the court's instructions must define the crime charged. *State v. Crace,* 289 N.W.2d 54, 59 (Minn.1979). In accordance with this, it is desirable for the court to explain the elements of the offense rather than simply to read statutes. *Id.*

Kuhnau argues that the instructions were in error because they failed to include all the elements of the crime underlying the conspiracy. Specifically, he argues that the instruction relating to the conspiracy to sell methamphetamine omitted the words "knew or believed that the substance sold was methamphetamine." Both the state and Kuhnau agreed that this knowledge requirement constituted an element of the sale counts because it was included in the instructions on the three sale counts.[2] However, the state argues that in regard to the conspiracy charge, knowledge that the substance to be sold in the future is a controlled substance is not an element of conspiracy to commit a first-degree controlled substance crime. A defendant who claims that the district court erred bears the burden of showing the error and any resulting prejudice. *State v. Shoop,* 441 N.W.2d 475, 480–81 (Minn. 1989). In this context, we must decide if the court erred in its instructions and then determine the resulting prejudice, if any.

We have long held that the crime of conspiracy requires (1) an agreement between two or more people to commit a crime and (2) an overt act in furtherance of the conspiracy. *See State v. Peterson,* 213 Minn. 56, 60, 4 N.W.2d 826, 828 (1942). A conscious and intentional purpose to break the law is an essential element of the crime of conspiracy and consists of two distinct crimes: the conspiracy and the substantive crime, which is the object of the conspiracy. *See Sisson v. Triplett,* 428 N.W.2d 565, 572 n. 6. (Minn.1988); *State v. Burns,* 215 Minn. 182, 186, 9 N.W.2d 518, 520 (1943). In *Burns,* we held that "criminal liability for conspiracy is predicated upon personal guilt * * *. A person cannot become a party to or criminally responsible for the criminal acts of another unless he knows their true character." *Id.,* 215 Minn. at 188, 9 N.W.2d at 521 (citations omitted). We have previously permitted conspiracy charges where there were defense allegations of a "feigned agreement" under Minn.Stat. § 609.175.[3] But the issue of bogus or phony "controlled substance" relating to the substantive crime, which is the object of the conspiracy, is one of first impression for this court.[4]

Minnesota Statutes § 152.096, subd. 1 provides in part: "Any person who conspires to commit any act prohibited by this chapter * * * is guilty of a felony and upon conviction may be imprisoned, fined or both, up to the maximum amount authorized by law for the act the person conspired to commit." Thus, under this statute, the substantive crime is the "act prohibited" and the "act the person conspired to commit." Furthermore, *Burns* requires both knowledge of an agreement and evidence of intent to commit the crime or act that is the object of the conspiracy. 215 Minn. at 188–89, 9 N.W.2d at 521. Therefore, our analysis in

---

**2.** *See* CRIMJIG 20.02, which provides in part: "defendant knew or believed that the substance sold was (a) mixtures(s) containing _____." 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 20.02 (4th ed.1999).

**3.** *See State v. St. Christopher,* 305 Minn. 226, 229–31, 232 N.W.2d 798, 800–02 (1975).

Moreover, Minn.Stat. § 609.175, subd. 2, provides in part "whoever conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy * * *."

**4.** *Cf.* Minn.Stat. § 152.097 (2000) (regulating simulated controlled substances).

the instant case focuses on whether the conspiracy instruction given reflected these requirements. At trial, the conspiracy instruction instructed the jury that:

> In order to convict Mr. Kuhnau of the offense of conspiracy to commit the crime of sale of a controlled substance in the first degree, the State must prove beyond a reasonable doubt all of the elements of the crime charged. The elements of the offense of conspiracy to commit the crime of sale of a controlled substance in the first degree in this case are:
>
> 1. That the defendant, Timothy Warren Kuhnau,
>
> 2. On November 5, 1997 in Todd County
>
> 3. Conspired with either Joseph Ferrian, Juan Ortiz or Joseph Biskey or all three of them
>
> 4. To commit the crime of sale of a controlled substance in the first degree and
>
> 5. That Mr. Kuhnau or another party to the conspiracy took an overt act in furtherance of the conspiracy.

Four pages later in the instructions, the jury was also provided with the following statutory definition of a first-degree sale of a controlled substance offense:

> Whoever unlawfully sells on one or more occasions within a 90–day period of time one or more mixtures of methamphetamine having a total weight of 50 grams or more is guilty of the crime of sale of a controlled substance in the first degree.

The comment to CRIMJIG 5.07 "Conspiracy–Elements" suggests that the defined crime and "if necessary, the 'Elements' instruction for the appropriate crime should be read. If it is desired to give the elements of the crime or to provide a further definition, this should be done immediately after reading this instruction." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 5.07 (4th ed.1999). The district court did follow the CRIMJIG comment suggestion of reading the defined criminal statute on conspiracy and also on the offense of sale of a controlled substance in the first degree. The court also instructed the jury on the elements of conspiracy immediately after reading the statutory definition of conspiracy, as suggested by the comment to CRIMJIG 5.07. In regard to the substantive crime, which was the object of the conspiracy, the conspiracy instruction only summarily stated "to commit the crime of sale of a controlled substance in the first degree." The statutory definition of the substantive crime was read four pages later in the instructions and the first-degree sale elements were not included there or anywhere else.

Thus, while the substance of the particular crime underlying the conspiracy was contained in the definition portion of the court's instructions to the jury, neither the summary recitation of the crime in paragraph four of the conspiracy instruction nor the subsequent statutory definition contained all of the essential elements of the substantive crime, which was the object of the conspiracy. Specifically omitted was the critical element language "whether Kuhnau knew or believed that the substance sold was methamphetamine under the facts presented."

█ This missing element from the instructions on the substantive crime, which was the object of the conspiracy charge, has added significance in this case because lack of knowledge of authenticity was the appellant's theory of defense. A defendant is entitled to an instruction on his theory of the case if there is evidence to support it. *State v. Ruud,* 259 N.W.2d 567, 578 (Minn.1977). Furthermore, this missing element was included in all the jury instructions relating to the other three counts of controlled substance violations—the "sale counts" or acts Kuhnau was charged with. Although all the prohibited acts were identical except for the differing degree of the charges, the only sale instruction that omitted this element—the one related to the conspiracy count—

was the only one on which the jury returned a guilty verdict. In that the language of Minn.Stat. § 152.096, subd. 1, as charged in this case, targets the acts of sale of a controlled substance in the first degree, all the elements relating to that sale are necessarily the same as the other sale charges.[5]

We finally review the instructions in their entirety to determine whether they fairly and adequately explained the law of the case. *Flores,* 418 N.W.2d at 155. We first note that all four instructions defining sale started out identically as follows: "Whoever unlawfully sells a mixture * * * of methamphetamine is guilty of the crime of sale of a controlled substance in the _____ degree." The district court next instructed the jury that in order to convict Kuhnau of each offense, " * * * the State must prove beyond a reasonable doubt all of the elements of the crime charged." Then, in regard to the elements of the two second-degree and one fourth-degree sale counts, the trial court instructed in part as follows: "The elements of unlawful sale of a controlled substance in the _____ degree as set forth in count ___ of the complaint are: * * * (4) When Mr. Kuhnau knew or believed that the substance sold was methamphetamine."

However, in regard to the elements of the conspiracy charge, the district court only instructed that "[t]he elements of the offense of conspiracy to commit the crime of sale of a controlled substance in the first degree in this case are * * * (4) To commit the crime of sale of a controlled substance in the first degree * * *." Four pages later, the statutory definition of the offense of sale of a controlled substance in the first degree was read to the jury without any further element instructions as to the substantive crime. Importantly, the definition did not include language requiring that Kuhnau knew or believed that the substance was a controlled substance.

The net effect of the given instruction was that the challenged instruction relating to the crime of sale of a controlled substance in the first degree did not require the jury to find all of the same elements of the substantive crime that were contained in the instructions on the other similar sale counts the jury had under consideration. This lower threshold of proof on the first-degree sale within the conspiracy charge juxtaposed to the other three sale counts that did contain the "knew or believed" element only highlights the significance of its critical omission. While the location and mere reading of the statutory definition of first-degree sale *without its elements in themselves may not* have constituted an abuse of discretion, under these facts, in comparison to the other three sale count instructions, the significance of the missing elements of the underlying crime is only increased.

We hold that when the instructions are viewed in their entirety, the district court abused its discretion by not instructing on all the sale counts in a similar fashion. The exclusion of the words "knew or believed that the substance sold was methamphetamine" from the instruction relating to the substantive crime of sale of a controlled substance in the first degree, which was the object of the conspiracy, was confusing and arguably created two differing explanations of the law of the case in regard to the same act: sale. It also deprived Kuhnau of his request to instruct the jury on his theory of the case in regard to bogus methamphetamine when there was evidence in the record supporting it. The conspiracy instruction's omission of an element of the offense of sale in the first degree did not fairly and adequately explain the law of the case and was error.[6]

▪▪▪▪▪ Though erroneous, the mistaken instruction may not require a new trial if the error was harmless. An error in

5. We note that appellant was not charged with conspiracy to sell a simulated controlled substance in violation of Minn.Stat. § 152.097.

6. To conclude, as the dissent does, that the district court did not abuse its discretion would necessitate our complete disregard for the state's misleading and confusing state-

jury instructions is not harmless and a new trial should be granted if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict. *Pendleton,* 567 N.W.2d at 270. We hold that the erroneous instruction did have a significant impact on the verdict, and Kuhnau is entitled to a new trial. Even if the jury had believed Kuhnau's testimony about the bogus methamphetamine, under the district court's instructions relating to sale in the first degree, it could still have found Kuhnau guilty. Our conclusion is supported by the state's rebuttal argument, which simply referred the jury to the given instructions, which omitted this "knew or believed" element of the substantive crime within the conspiracy instruction.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

LANCASTER, Justice (dissenting).

I respectfully dissent. I believe that the jury instructions given by the district court adequately stated the law and that the district court did not abuse its discretion in giving them.

District courts are given considerable latitude in selecting language for jury instructions. *State v. Peou,* 579 N.W.2d 471, 475 (Minn.1998). "When determining the adequacy of jury instructions, we have held that '[a] refusal to give a requested jury instruction in a criminal case lies within the broad discretion of the trial court * * *.' " *Id.* (quoting *State v. Auchampach,* 540 N.W.2d 808, 816 (Minn. 1995)). When reviewing jury instructions to determine whether a district court abused its discretion, the instructions must be read as a whole. *Id.* If, when viewed in their entirety, the instructions correctly state the law in such a way that can be understood by the jury, then the district court did not abuse its discretion and there

is no reversible error. *Id.* When making this determination, the court must assume that "the jurors were intelligent and practical people." *Id.*

The majority states that to convict Kuhnau of conspiracy to commit sale of controlled substance in the first degree, the jury had to find that he possessed a "conscious and intentional purpose to break the law." The state was required to prove that Kuhnau had knowledge of the conspiracy agreement and intent to commit the underlying substantive crime that is the object of the conspiracy, i.e., sale of a controlled substance in the first degree. That far, I am in agreement with the majority, but I disagree with the majority's holding that the instructions given did not correctly reflect the law.

The majority concludes that the instructions did not correctly state the law because they did not include the intent element of the substantive crime, specifically the instructions omitted the language "whether Kuhnau knew or believed that the substance sold was methamphetamine under the facts presented." The majority focuses its analysis of the jury instructions on what it characterizes as missing or omitted language. In doing so, it fails to account for all the language that was present in the instructions and, therefore, fails to analyze the instructions as a whole.

In addition to the language quoted by the majority, the jury instructions stated: "A person conspires with another person when he agrees with the other person to commit a crime." The instructions further stated: "The existence of a conspiracy may be inferred from all of the evidence tending to show intentionally concerted action to accomplish the commission of a crime. * * * [The co-conspirators'] actions must be the result of preconceived and mutual intention to commit a crime." To convict Kuhnau of conspiracy, then, the instructions required the jury to find that he and

ments made during closing arguments. The state argued that Kuhnau was inaccurate in his argument that he had to intend to sell methamphetamine to be guilty of a conspiracy to sell methamphetamine. For the reasons

stated, it was the state that was inaccurate, not the defense. If the parties are so confused, it is difficult to accept the dissent's position that the instructions were so clear as to be understood by the jury.

his co-conspirators had an "intention to commit" sale of a controlled substance in the first degree.

Because the instructions required that Kuhnau *intend* to commit first-degree sale of a controlled substance, and because the crime of first-degree sale prohibits the sale of real drugs, the instructions necessarily encompassed the notion that a conspiracy conviction could not stand unless Kuhnau intended to sell real drugs. Put another way, when two or more people intentionally conspire to commit sale of a controlled substance in the first degree, it follows that they intend to sell real drugs. Accordingly, the district court's instruction that "their actions must be the result of preconceived and mutual intention" adequately describes the requisite mental state for conspiracy to commit sale of a controlled substance in the first degree.

The majority also focuses on the substance that actually changed hands between Kuhnau and Officer Sherbrooke. A conspiracy charge does not require that any substance change hands; the crime is complete when there is an agreement to commit a crime (to sell drugs in this case) and an overt act in furtherance of the agreement is taken by one of the conspirators. If a substance actually changes hands, that certainly could be useful information for the jury in deciding whether the elements of conspiracy are met, but it is not itself an element of conspiracy. Here, the state misplaced the substance that changed hands prior to trial. Without the substance, the jury could well have concluded that the state did not prove beyond a reasonable doubt that the substance was methamphetamine. In fact, that seems likely given the not-guilty verdicts on the actual distribution counts for which transfer of real drugs *is* an element. Whether the substance was methamphetamine, however, is not dispositive of the question of what Kuhnau conspired to distribute. The defense argued vigorously at trial that he did not intend to sell real drugs. The argument did not succeed, but nothing in the district court's instructions prevented the argument from being presented.

Because the instructions as given correctly reflect the law, and because they did not preclude Kuhnau from arguing his theory of defense, the district court did not abuse its discretion by submitting these jury instructions.[1]

---

1. The majority characterizes portions of the state's closing argument as "misleading and confusing." The state's argument, to which no objection was made, does not render the instructions erroneous.